IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.   13-575-01 |
| MICHAEL MATEJA | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and David L. Axelrod, Assistant United States Attorney for the District, hereby files this sentencing memorandum in, and for the reasons herein respectfully requests that the Court impose a sentence at the bottom of the guideline range of 33 to 41 months' imprisonment, and order the defendant to pay full restitution.

**I.      BACKGROUND**

   **A.      Procedural Background**

On October 22, 2013, The United States Attorney's Office for the Eastern District of Pennsylvania filed a two-count Information, charging defendant Michael Mateja with one count of wire fraud, and aiding and abetting wire fraud, in violation of 18 U.S.C. § 1343, and one count of obstruction of justice, in violation of 18 U.S.C. § 1505.   On December 19, 2013, Mateja pled guilty pursuant to a plea agreement with the government.

   **B.      Factual Background**

Defendants Michael Mateja and Samuel Puleo held themselves out as co-owners of Coastal Energy, LLC ("Coastal"), a company that brokered energy contracts between commercial businesses and energy suppliers.   Coastal operated as an energy broker, finding commercial

energy clients for energy suppliers. Coastal was paid a commission by the energy supplier once the customer entered into an agreement with the energy supplier.

In the middle of 2012, Mateja and Puleo decided to alter a number of contracts signed by customers, and then send the altered contracts on to the energy suppliers. As part of this process, Mateja and Puleo had Coastal clients sign limited power of attorney agreements ("Coastal POA") allowing Coastal's employees to negotiate directly with energy providers on the client's behalf. Each Coastal POA signed by a Coastal client stated the "Contract Type" or the price per kilowatt hour that Coastal would negotiate.

The Coastal POA signed by Coastal clients stated that Coastal would negotiate a "Fixed All-Inclusive" rate for the client. A "Fixed All-Inclusive" contract provides the customer with one rate for each kilowatt hour used. This single rate includes charges for transmission, capacity, and energy, the three common charges that make up a consumer's energy bill. Alternatively, an "Energy Only" contract provides the customer with a rate for each kilowatt hour, but this rate does not include the additional charges for transmission and capacity. As an energy broker Coastal could not negotiate the transmission and capacity charges.

Unbeknownst to their clients, Mateja and Puleo altered the signed Coastal POA by changing the terms of the contract from "Fixed All-Inclusive" contracts to "Energy Only." A third person, co-defendant Matthew Morgan helped Mateja and Puleo alter the contracts. After defendants altered these contracts, they sent the altered contracts on to energy suppliers via electronic mail. These energy suppliers, located in Illinois, New Jersey, and other places, assumed that the Coastal POA were valid and entered into energy supply agreements with Coastal's clients. In some cases, these energy suppliers also purchased energy and spent other monies based on the expectation that they would be fulfilling their commitments to supply energy

on these contracts.

As a result of the actions of defendants Mateja, Puleo, and Morgan, Coastal earned commissions that it was not entitled to and its clients ended up paying much higher rates for energy than they contracted for. .

The fraud scheme did not work well. Many of the customers immediately noticed their energy bills were much higher than what they believed they would be charged. Some customers received copies of their agreement from the energy supplier and saw that it was different than the version they had completed with Coastal.

With respect to Count One, a New Jersey company, R.B., signed a Coastal POA agreeing that Coastal could negotiate a "Fixed All-Inclusive" contract on its behalf where it agreed to pay a total price of $0.07069 per kilowatt hour. After R.B. executed the Coastal POA, Mateja and Puleo had Morgan alter the document to indicate that R.B. agreed to enter into a "Fixed Energy" contract with a price of $0.05590 per kilowatt hour for energy only. On R.B.'s behalf Coastal then negotiated a contract with an Illinois energy supplier whereby R.B. agreed to pay $0.05590 per kilowatt hour for energy only. As a result of this undisclosed alteration, R.B. ended up paying a much higher total rate per kilowatt hour than the $0.07069 it agreed to pay. Subsequently, Coastal emailed this altered contract from Pennsylvania to the energy supplier in Illinois.

With respect to Count Two, in 2012, Puleo and Mateja heard that Coastal was being investigated by the FBI for altering energy contracts as discussed above. In September 2012, Mateja had Morgan erase data from Coastal's computer servers and hard drives.

## II. SENTENCING ANALYSIS

### A. Statutory Maximum Sentence

The Court may impose the following statutory maximum sentences: Count One (wire fraud), 20 years imprisonment, a $250,000 fine, three years supervised release, and a $100 special assessment; Count Two (obstruction of justice), five years imprisonment, a $250,000 fine, three years supervised release, and a $100 special assessment. The total maximum sentence defendant faces is: 25 years imprisonment, a $500,000 fine, three years supervised release, and a $200 special assessment.

### B. Advisory Guidelines Calculation

The government concurs in the guidelines calculation that appears in the Presentence Report ("PSR") at ¶¶ 35-46, as summarized in the following chart:

| Base offense level | U.S.S.G. §2B1.1(a)(1) | 7 |
|---|---|---|
| Loss amount greater than $400,000 but less than $1,000,000 | U.S.S.G. §2B1.1(b)(1)(H) | +14 |
| Obstruction of justice | U.S.S.G. §3C1.1 | +2 |
| Adjustment for acceptance of responsibility | U.S.S.G. §3E1.1(a) | -2 |
| Adjustment for acceptance of responsibility | U.S.S.G. §3E1.1(b) | -1 |
| Total Offense Level | | 20 |

Because the defendant is in criminal history category I, the advisory guideline range is 33 to 41 months' imprisonment.

### C. Consideration of the 3553(a) Factors

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a), indicates that a sentence of imprisonment at the bottom of the advisory guideline range is appropriate. Those factors include: (1) the nature and circumstances of the offense and the

history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).[1]   A review of the remaining 3553(a) factors illustrates the propriety of the sentence recommended by the government.

> 1. **The nature and circumstances of the offense and the history and characteristics of the defendant**

The offense in this case was driven simply by greed.   Mateja and his co-defendants sought to increase their company's sales and lied to succeed.

Mateja has no criminal history.   It appears from the information in the PSR that Mateja came from a family where he was given substantial opportunities to succeed.   He then went to a premier university.   It also appears that he has a consistent history of employment, working both menial jobs and starting his own businesses.

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."   The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'"   United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

**2.   The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

The crime in this case was serious.   Mateja and his co-defendants successfully persuaded small businesses located in Pennsylvania and New Jersey to hire Coastal to broker their energy contract.   Instead of receiving the benefits of lower prices, the customers were duped into entering contracts that provided just the opposite – higher prices.

The government is hopeful that after this process Mateja will have respect for the law.   Mateja appears to have taken positive steps.   He pled guilty to an information and met with the government to explain his crimes and help conclude the government's investigation.

**3.   The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant;**

General deterrence is significantly more important than specific deterrence.  Mateja had no criminal record before he became involved in this scheme and there is little in his background and characteristics that suggest he poses a risk of recidivism.

General deterrence is more important.   Consumers and small businesses need to be protected from fraudsters who will attempt to replicate schemes like this.   AEP Energy, one of the victims in this case described the following non-economic injury it suffered: "AEP Energy suffered incalculable damage to its reputation due to the negative impact of Defendants' fraudulent conduct on customers who thought they were signing up for electricity service with AEP Energy."

**4.   The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

There is no need to adjust defendant's sentence based on the need for education or vocational training.

> **5.    The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;**

While the sentencing guidelines are advisory, they remain the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984.  Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments.   The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines."   The section of *Booker* that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, *helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.*"   Booker, 543 U.S. at 264-65 (emphasis added).   The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the *Booker* Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines.   Id. at 263.   We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'"   United States v. Cooper, 437 F.3d 324, 331 (3d Cir. 2006) (quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005)).

United States v. Ricks, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original).

In the present case, all of the relevant facts suggest the Court should impose a sentence at the bottom of the recommended guideline range.

## III.   RESTITUTION

The government respectfully asks the Court to order Mateja to pay full restitution to the victims of the Coastal fraud scheme.   The government has submitted a restitution spreadsheet summarizing the restitution owed to each of Mateja's victims.   The total restitution owed is

$818,903, split among six victims.

Mateja has objected to the losses of three of the victims: Atlantic States Pipe Company, Property Management, Inc., and AEP Energy.  PSR, Objections.  First, Mateja objects to Atlantic States Pipe's loss, on the grounds that Coastal saved Atlantic States Pipe money in another way.  This explanation makes little sense, and without substantial evidence does not overcome Atlantic States Pipe's contention (and signed declaration) that it sustained losses of $141,399 because it was charged higher energy rates due to defendants' fraud.  PSR ¶ 24.  Second, Mateja objects to the loss sustained by Property Management, Inc.  The summary restitution chart does not include a loss for this company.[2]  Third, Mateja objects to the loss sustained by AEP Energy on the grounds "that the company may have made money and had no losses."  The government has submitted a letter to the Court from AEP Energy which fully supports the losses this company sustained.

## IV.     CONCLUSION

Accordingly, the government respectfully recommends the court impose a sentence of imprisonment at the bottom of the advisory guideline range of 33 to 41 months' imprisonment and order the defendant to pay full restitution.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


/s/
DAVID L. AXELROD
Assistant United States Attorney

---

2 At the sentencing for co-defendant Puleo, the Court did not order any restitution to be paid to this company.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's sentencing memorandum has been served by electronic filing and/or first-class mail to:

John J. Waldron
Huber and Waldron
535 Hamilton Mall #301
Allentown, PA 18101

\_\_\_\_\_/s/_____
DAVID L. AXELROD
Assistant United States Attorney

DATED: June 6, 2014