**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | *   Case No.: 0313 2:13CR00575-001 |
| vs. | * |
| | * |
| MICHAEL MATEJA, | * |
| | * |
| Defendant | * |

**DEFENDANT'S SENTENCING MEMORANDUM**

AND NOW, comes the Defendant, Michael Mateja, by and through his counsel, John J. Waldron, Esquire, and respectfully submits the following Sentencing Memorandum to this Honorable Court for his Sentencing Hearing to be held on June 16th, 2014 and would move that he receive a minimally sufficient sentence to achieve the goals of punishment pursuant to Section 3553(a) factors, and in support of this Sentencing Memorandum, the Defendant avers the following:

**I.     INTRODUCTION**

On October 22, 2013 a two-count Information charged Michael Mateja, Samuel Puleo, and Matthew Morgan with wire fraud and aiding and abetting in violation of 18 U.S.C. 1343, 1349, and 2 (Count 1). Michael Mateja and Matthew Morgan were also charged with obstruction of justice in violation of 18 U.S.C. § 1505 (Count 2).

On December 19, 2013, pursuant to a written plea agreement, Michael Mateja appeared before the Honorable Michael M. Baylson and pled guilty to all counts of the information (Counts 1 and 2). Pretrial services records indicate Mr. Mateja has complied with all Court ordered conditions of release.

## II.     FEDERAL SENTENCING GUIDELINES POST-BOOKER SENTENCING IN THE THIRD CIRCUIT

As revised by *United States v. Booker*, 543 U.S. 220, 245-6 (2005), the Sentencing Reform Act "requires a sentencing court to consider [advisory] guidelines ranges, see 18 U.S.C. § 3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as, well, see § 3553(a)." This means that a district court's primary obligation is to choose a sentence in light of all the statutory sentencing factors (including the advisory guideline range) in the context of a defendant's particular case, and that sentence may or may not be imposed with regard to the guideline range. *See United States v. Coleman*, 451 F.3d 154, 158 (3d Cir.2006) ("the guidelines recommended range may be modified or disregarded by a district court upon consideration of the other sentencing factors Congress has identified in § 3553(a)"). Essentially, *Post-Booker* guidelines are merely advisory.

In the Third Circuit, district courts "follow a three-step sentencing process." *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker* . . .
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-<u>Booker</u> case law, which continues to have advisory force . . .
>
> (3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors . . . in setting the sentence to impose regardless whether it varies from the sentence calculated under the guidelines.

2

*Id.* Thus, in the critical third *Gunter* step, the district courts must apply their own independent judgment to the sentence to be imposed in light of the sentencing factors, whether or not that judgment results in a sentence within the advisory range. *See also United States v. Cooper,* 437 F.3d 324, 329-30 (3d Cir. 2006) (district court must give "meaningful consideration to the section 3553(a) factors" and impose a sentence for reasons that are logical and consistent with those factors, but rejecting a presumption that the sentence should be imposed within guideline range).

Moreover, as the Court explained in *Gunter*, section 3553(a) "begins with the broad mandate that sentencing courts shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set out in the statute." 462 F.3d at 243 n.9. This broad mandate applies to the consideration of all of the section 3553(a) factors, and it necessarily takes precedence of the advisory guideline range and other individual factors.

A district court commits error if, in applying the third *Gunter* step, it believes that it is bound by any aspect of the sentencing guidelines. This aspect of post-*Booker* Third Circuit law was illustrated clearly in *Gunter*, 462 F.3d 237. There, the defendant's guideline range was based on his offense for possession with intent to distribute cocaine base ("crack" cocaine). At the time, the guidelines for crack cocaine were subject to the 100-to-1 crack versus powder cocaine differential, meaning that the defendant's advisory guideline range was significantly higher than it would have been had his offense involved powder cocaine. *Id.* at 238. At Sentencing, the defense asked the district court to consider the unwarranted nature of that differential in imposing sentence. The district court refused to do so, concluding that it was not at liberty to reconsider Congressional intent in establishing and maintaining the differential. *Id.* at 239. The Third Circuit remanded, because the district court's refusal to consider the differential merely as

3

advisory in the third step of the sentencing process amounted to treating the guidelines as mandatory. *Id.* at 247-48; See also *Cooper*, 437 F.3d at 330-31 (rejecting notion that guideline sentence if presumptively correct as "coming close to restoring the mandatory nature of the guidelines").

Accordingly, district courts now have much greater discretion in sentencing than was previously afforded, and the Third Circuit has spoken firmly in support of this discretion. The courts should exercise their sentencing discretion to further the directives and purposes of 18 U.S.C. § 3553, which are set forth and applied to Mr. Mateja's case in the next sections.

### III.     THE DIRECTIVE AND FACTORS OF SECTION 3553(a)

The primary directive in section 3553(a), as noted above, is for sentencing courts to "impose a sentence sufficient, but <u>not greater than necessary</u>, to comply with the purposes set forth in paragraph 2," which are:

- (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- (B)   to afford adequate deterrence to criminal conduct;
- (C)   to protect the public from further crimes of the defendant; and
- (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In determining the minimally sufficient sentence, section 3553(a) further directs sentencing courts to consider the following factors:

1) the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);
2) the kinds of sentences available, the advisory guideline range and pertinent guideline policy statements, §3553(a)(3)-(5);
3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
4) the need to provide restitution to any victims of the offense, §3553(a)(7).

This is not an exhaustive list of the factors the Court can consider, as "no limitation shall be placed on the information concerning the background, character, and conduct of Mr. Mateja which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661.

IV.     **APPLICATION OF THE STATUTORY FACTORS TO THIS CASE**

A.      **The History and Characteristics of the Offender and the Nature and Circumstances of the Offense.**

Michael Mateja was born on November 20, 1986 in Boston, Massachusetts. He is twenty-seven (27) years old. He is currently single and has never married. Mr. Mateja's father, Thaddeus Mateja (61), is an electrical engineer. His mother Lucyna Mateja (62) is a high school teacher. Mr. Mateja resides at 1607 Salem Street, North Andover, Massachusetts with his parents. He has one sibling, Melissa Ferrigno (32), who resides in Storrs, Connecticut employed by the University of Connecticut.

Mr. Mateja attended Lehigh University in Bethlehem, Pennsylvania. In 2011, he graduated with a bachelor of science in business and economics with a major of finance. Mr. Mateja has an extensive work history since 2000 working at a variety of positions for several companies. These jobs included several salesman positions including Circuit City, Bose Corporation, and even some work in telemarketing. In 2010, Mr. Mateja co-owned and worked as a utility auditor at Coastal. Currently, Mr. Mateja has been working as a bartender at the Beehive in Boston, Massachusetts since February of this year. Mr. Mateja does not report any physical, mental, or emotional health concerns. A urinalysis administered by the United States Pretrial Services Office on December 19, 2013, provided negative results for drug use.

This offense arises in regards to a fraudulent business scheme under Coastal Energy LLC ("Coastal"). The business consisted of brokering energy contracts between commercial businesses and energy suppliers. Mr. Mateja and Mr. Puleo were co-owners of Coastal and Mr. Morgan was an employee. They solicited business in Pennsylvania and New Jersey with the representation of negotiating lowering energy prices from energy providers. The company would receive paid commissions by the energy suppliers once customers entered into agreements. From June 2011 to February 2013, the defendants altered a number of contracts changing the terms of the contract from "Fixed All-Inclusive" to "Energy Only". This effectively cost the customers higher rates for energy. Such a scheme did not work very well and many clients immediately noticed the higher bills.

**B.      The Need for the Sentence Imposed to Promote Certain Statutory Objectives:**

**(1) To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.**

Mr. Mateja has suffered the shame and humiliation of being charged in this matter and having entered a guilty plea to Wire Fraud. This Court will no doubt sentence Mr. Mateja in a fashion that reflects the seriousness of the offense, but at the same time, provide for just punishment. The negative stigma of being convicted of a fraudulent offense will also follow Mr. Mateja for the rest of his adult life. This stigma will magnify the punishment imposed by the Court as businesses will consider his conviction when considering whether to hire him in his chosen field.

**(2) To afford adequate deterrence to criminal conduct, to protect the public from further crimes, and to provide the defendant with needed medical or other correctional treatment in the most effective manner.**

Mr. Mateja faces a significant period of incarceration pursuant to the advisory guidelines. Mr. Mateja certainly recognizes the seriousness of his actions. The Government acknowledges that Mr. Mateja has taken positive steps. Mr. Mateja met with the government to explain his crimes and helped conclude the government's investigation.

**C.     The Kinds of Sentences Available.**

The guideline for violations of 18 U.S.C. § 1343 and 1349 offenses is found in U.S.S.G. §2B1.1. The base offense level is 7. Based upon the amounts charged in the information, the offense level is increased by 14 levels (21). Since the Defendnat obstructed justice the offense level is increased by 2 levels (23). Pursuant to Mr. Mateja's acceptance of responsibility and timely notification his offense is reduced by 3 levels (20).

Thus, Mr. Mateja faces a Total Adjusted Offense Level of 20. With no prior criminal history the guideline range of imprisonment is 33 to 41 months. Nevertheless, although the district court must give respectful consideration to the guidelines in determining a sufficient sentence, *Gall v. United States*, 128 S. Ct. at 594, it may not presume that the guideline sentence is the correct one, *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007). Mr. Mateja is statutorily eligible for not less than 1 year nor more than 5 years of probation with regard to each count. 18 U.S.C. 3561(c)(1).

## V.      RESTITUTION

The Court must also consider the issue of restitution. If the Court is imposing restitution it must consider the financial resources of the defendant, the financial needs and earning ability of the defendant, and the defendant's dependents, and other such factors as the court deems appropriate. See 18 U.S.C. § 3663(a)(1)(B)(i)(II). As the Pre-Sentence Investigation Report indicates, Mr. Mateja has significant negative net worth. See PSR ¶85. He has negative cash flow values and is currently residing with this parents. *Id.*

Even with negative cash flow and negative net worth, Mr. Mateja has been working diligently to make payments to several victims to the best of his financial ability. Mr. Mateja has made payment arrangements with both Silvi Group and Friedmans. Mr. Mateja has paid over $15,000.00 to Friedmans and over $6,000.00 to Silvi.

In regards to future payments and earning ability, Mr. Mateja would note that his business does not have any guaranteed income of any sort. He has been fortunate to obtain some ongoing auditing that he performs every month. From that account he can attempt to generate $6000-$10,000/month but it is not guaranteed and is a direct result of the savings Mr. Mateja can show from audit changes. This is highly dependent on tariff rates and related to first energy and could change or disappear. In addition, his company has outstanding liabilities to the IRS in excess of $50,000 and the Department of Unemployment for approximately $7,000.00 with payments made directly from any gross revenue. This also doesn't account for the operating costs of maintaining the business.

Mr. Mateja has kept his company operating, with little help from his co-defendants, and is doing his best to pay all liabilities. These liabilities are being met due to Mateja's operation

and growth of the business. If the business continues to grow, there is a possibility to pay back full restitution in a short time frame. Counsel respectfully requests to address any additional issues in regards to restitution at the sentencing hearing.

## VI.     CONCLUSION

For the foregoing reasons, the Defendant Michael Mateja respectfully submits that a sentence which is substantially below the sentencing range recommended by the guidelines is an appropriate sentence. Such sentence would adequately consider the enumerated factors and fashion a sentence that is not greater than necessary to comply with the purpose of sentencing.

**RESPECTFULLY SUBMITTED:**

/s/ John Waldron
John J. Waldron, Esquire
Attorney for Michael Mateja
535 Hamilton Mall Suite 301
Allentown, PA 18101
610-435-9790
I.D. #: 36853

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Defendant's Sentencing Memorandum filed through the ECF System will be electronically sent to the registered participants as identified on the Notice of Electronic Filing, including the following:

David Axelrod, Esquire
Assistant U.S. Attorney
David.Axelrod@usdoj.gov

Janice A. Lutz
Criminal Deputy to Honorable Michael M. Baylson
267-299-7528 (Fax)

Antonio Maiocco
Senior U.S. Probation Officer
Antonio_Maiocco@paep.uscourts.gov

/s/ John Waldron
John J. Waldron, Esquire
Attorney for Michael Mateja
535 Hamilton Mall Suite 301
Allentown, PA 18101
610-435-9790
I.D. #: 36853

Date: June 13, 2014